IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES A. CAPLINGER          Case No 2:08-cv-548

    Plaintiffs            Judge James L. Graham
                               Magistrate Judge Norah McCann King
  v.

URANIUM DISPOSITION SERVICES, LLC, et al.

    Defendants.


OPINION AND ORDER


This matter is before the court on motions to dismiss pursuant to Civ. R. 12(b)(6), or in the alternative motions for summary judgment, filed by defendant Uranium Disposition Services, LLC (UDS) and defendant Lake Erie Electric, Inc. (Lake Erie). Plaintiff is James A. Caplinger (Caplinger). For the reasons set forth herein, the court grants in part and denies in part the motions to dismiss.

I.     FACTUAL BACKGROUND

Defendant UDS is a Kentucky limited liability corporation which does business in the State of Ohio. UDS was contracted by the U.S. Department of Energy (DOE) to dispose of depleted uranium hexaflouride (DUF6) that had been stored in three separate sites, including a site in Piketon, Ohio (the "Portsmouth Project"). The UDS project was to design, construct, and operate conversion facilities that would convert the DOE's inventory of DUF6 into a stable chemical form acceptable for beneficial use/reuse or disposal.

As part of the Portsmouth Project, UDS contracted with Lake Erie to provide electrical

1

support at the project site. Plaintiff, an employee of Lake Erie, was assigned to work at the Portsmouth Project location on December 18, 2006 but injured his right knee while in the course and scope of his employment on December 28, 2006. On or about June 8, 2007, Plaintiff was cleared by his physician to return to work without restrictions but was denied entrance to the job site when he attempted to return on June 11, 2007. On June 13, 2007, Plaintiff's Local Union informed him that he was not permitted back at the Portsmouth Project site because he was perceived as a "safety liability."

According to the plaintiff's complaint, he filed charges of disability discrimination with the Equal Employment Opportunity Commission (EEOC) against both UDS and Lake Erie on May 12, 2008. He received a right to sue letter against Lake Erie on May 27, 2008 and a right to sue letter against UDS on May 28, 2008. Plaintiff acknowledges that he filed the official charge 344 days after the discriminatory conduct occurred.

On June 6, 2008, plaintiff filed suit against defendants UDS and Lake Erie, alleging that defendants violated 42 U.S.C. §12101, the Americans with Disabilities Act (ADA). Specifically, plaintiff claims that he was a qualified individual with a disability who was regarded as having a physical impairment which defendants believed limited his ability to perform the essential duties of his employment. Plaintiff asserts that he was, in fact, able to perform the essential duties of his position, with or without accommodation. In addition, plaintiff claims that defendant violated Ohio's version of the ADA, found at Ohio Rev. Code § 4112, engaged in tortuous interference with a business relationship, and violated Ohio's public policy against disability discrimination.

On August 7, 2008, Lake Erie moved to dismiss the complaint. UDS moved to dismiss the complaint on August 11, 2008. Both defendants make essentially the same arguments for

dismissal, asserting that the plaintiff's federal ADA claim was untimely and therefore, the pendant state law claims should be dismissed as well. Defendant UDS makes an additional argument that the plaintiff's claim for wrongful discharge in violation of Ohio's public policy must be dismissed on the grounds that the plaintiff already has adequate statutory remedies. After plaintiff's responses to the motions to dismiss, both defendants filed their replies in support, and alternatively, moved the court to grant them summary judgment in the event that plaintiff's additional documentation attached to its response is considered by the court. For purposes of efficiency, the court will address both defendants motions in this opinion and order.

## II.  LEGAL STANDARD

As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed.R.Civ.P. 56. Weiner v. Klais & Co., Inc., 108 F.3d 86, 88 (6th Cir.1997). However, there are exceptions to this rule. Documents attached to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. Id. at 89; Branch v. Tunnell, 14 F.3d 449, 453-454 (9th Cir.1994)(deposition and affidavit properly considered where complaint refers to document and authenticity of exhibits is not questioned); Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947 (6th Cir.1990) (pension plan properly considered). A court may consider an undisputedly authentic document attached to a motion to dismiss if plaintiff's claims are based on the document. Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196(3d Cir.1993).

Courts may also consider public records, including court records in related cases, see In Re American Continental Corp./Lincoln Sav. & Loan Securities Litigation, 102 F.3d 1524 (9th

Cir.1996) rev'd on other grounds sub nom; Lexecon Inc. v. Milberg Weiss Bershad Hynes and Lerach, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998); Henson v. CSC Credit Services, 29 F.3d 280 (7th Cir.1994); or letter decisions of government agencies and published reports of administrative bodies, see White Consolidated Industries, 998 F.2d at 1197; Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir.1986). Courts may also consider matters of which they may take judicial notice. Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1018 (5th Cir.1996) (citing Fed.R.Evid. 201(f): "Judicial notice may be taken at any stage of the proceeding.").

Documents filed with, and coming from, the EEOC are considered matters of public record. See Martin v. Anheuser-Busch, No. 05-2241, 2006 U.S. Dist. LEXIS 22207 (D. N.J. Mar. 30, 2006)(copies of intake questionnaires completed and submitted to the EEOC are public records); Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000) (court may consider EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and the intake questionnaire as information which is a matter of public record); Kuper v. Colonial Penn Ins. Co., No. 99-172, 1999 U.S. Dist. LEXIS 7179, 1999 WL 317077, at *1 (E.D. Pa. 1999) (considering various documents generated or maintained by EEOC in its investigation and processing of plaintiff's discrimination charge when deciding motion to dismiss). Accordingly, the court may consider the documents attached to the plaintiffs' complaint as well as the two documents attached to the plaintiff's response to motion to dismiss as matters within the public record, without converting the motion to dismiss to a motion for summary judgment.

### III. LEGAL DISCUSSION

#### A. Timeliness of the Plaintiff's Charge

The ADA prohibits discrimination by covered entities against qualified individuals with a disability. 42 U.S.C. § 12112(a). In order to properly commence a federal court action alleging violations of the ADA, a plaintiff must file an EEOC charge in accordance with 42 U.S.C. § 2000e-5(e)(1) and the EEOC must issue a 90-day right-to-sue notice. See, 42 U.S.C. § 2000e-5(f)(1); see also, 42 U.S.C. § 12117(a) (providing that the procedures set forth in 42 U.S.C. § 2000e-5 and elsewhere in Title VII apply to the enforcement of the ADA); Puckett v. Tennessee Eastman Company, 889 F.2d 1481, 1486 (6th Cir. 1989) (plaintiff satisfies the prerequisites to an employment discrimination action by filing a timely charge of employment discrimination with the EEOC and receiving and acting upon the EEOC's statutory notice of a right to sue).

The parties agree that under the applicable law, plaintiff had 300 days from the date of the employment discrimination action in which to file a charge with the EEOC. Kellum v. Erie County Sheriff's Dep't, No. 3:99CV7301, 1999 U.S. Dist. LEXIS 21176 (N.D. Ohio Nov. 30, 1999) (stating "42 U.S.C. § 2000e-5(e)(1) requires that a charge of employment discrimination be filed with the EEOC within 180 days after the alleged unlawful practice occurred. If the individual has instituted proceedings with a state or local agency that has the authority to grant relief from the practice complained of, the charge is to be filed within 300 days"). The parties also agree that the plaintiff did not file his formal charge with the EEOC until 334 days after he was notified of his termination. Where the parties differ is in whether the plaintiff's intake questionnaire, filed before the 300 day deadline, can act to serve as a charge, thereby making plaintiff's ADA claim timely filed.

The EEOC intake questionnaire form used by the plaintiff states, at Footnote number 3:

5

> PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information in an acceptable form consistent with statutory requirements to enable the Commission to act on matters within its jurisdiction. When this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 C.F.R. §1601.12(b) and 29 C.F.R. §1628.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s).

According to the plain language of this form, the EEOC will consider an intake questionnaire to be a sufficient charge of discrimination when it "constitutes the only timely written statement of allegations of employment discrimination." See Wolf v. E. Tex. Med. Ctr., 515 F. Supp. 2d 682, 689 (E.D. Tex. 2007) (given the language on the form, the questionnaire was considered as a timely charge); Jones v. County of Cook, No. 01 C 9876, 2002 U.S. Dist. LEXIS 13075 (N.D. Ill. Jul. 16, 2002) (taking note of the plain language on the form and concluding that when the questionnaire is the only timely written statement of allegations of employment discrimination then the EEOC will consider it a charge of discrimination); Hillemann v. Univ. of Cent. Fla., 411 F. Supp. 2d 1354, 1361 (M.D. Fla. 2004) (considering the language on the intake form to mean that it "should be considered a charge (rather than a mere questionnaire) for purposes of meeting the statute of limitations"); Taylor v. One Imagistics, Inc., Civil No. 07-792, 2008 U.S. Dist. LEXIS 41296, (E.D. Va. May 21, 2008) (treating as a charge a questionnaire that contains the language indicating that it will be treated as a charge where it is the only timely written statement of alleged discrimination); Overall v. Smurfit-Stone Container Corp., No. 4:07CV01549 ERW, 2008 U.S. Dist. LEXIS 57477 (E.D. Mo. July 30, 2008) (the specific statement on the intake form that this form shall be considered sufficient to satisfy the charge requirement led to the conclusion that the intake form should be treated as a charge).

However, the form signed by the plaintiff also requires that, in order for the questionnaire to be considered a charge, it must meet the requirements of 29 C.F.R. §1601.12(b). 29 C.F.R

§1601.12 (b) provides:

> (b) Notwithstanding the provisions of paragraph (a) of this section[1] a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

Both UDS and Lake Erie assert that the completed intake questionnaire is not "sufficiently precise to identify the parties." UDS argues that it was not sufficiently identified because plaintiff did not include correct address for UDS, thereby preventing UDS from receiving notice of the filing until the lawsuit commenced against it. Lake Erie also asserts that the completed intake questionnaire is not "sufficiently precise to identify the parties" because plaintiff did not include correct address for Lake Erie.

The requirements for a charge are "very minimal." EEOC v. Mississippi Coll., 626 F.2d 477, 483 (5th Cir.1980). 29 C.F.R. §1601.12(b) requires only that the information provided on the

---

[1] Paragraph (a) of this section provides:

(a) Each charge should contain the following: (1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7; (2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent); (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b); (4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

7

charge be sufficient ly precise to identify the parties. Under paragraph 2 of the intake form, titled "Organization Contact Information," plaintiff provided UDS' name, city and state where it is located, two telephone numbers, the name of a construction manager and administrator, provided an alternate business location, and provided the number of people employed by UDS. As regards Lake Erie, plaintiff provided defendant's name, the state where it is located, the last name of a vice president and general foreman, and provided the number of people employed by Lake Erie.

It is not mandatory that the charge of discrimination contain the employer's address. Section (a) specifically states that the employer's address and name should be included in the charge, "if known." Furthermore, the charge may be amended to cure technical defects, to clarify or amplify allegations, or to allege additional unlawful acts. Wilkerson v. Grinnell Corp. 270 F.3d 1314, 1318 (11th Cir. 2001). The omission of the employer's address is "truly a technical defect which does not affect the substance of the charge and which can be easily remedied." Waiters v. Robert Bosch Corp., 683 F.2d 89, 92 (4th Cir.1988). Nor does the fact that plaintiff listed an alternate facility site, other than defendant's headquarters, affect the substance or timeliness of the charge. See, Fuquay-Varina.Cortes v. McDonald's Corp., 955 F.Supp.531 (E.D.N.C. 1996) (plaintiff's listing of the employer's address as the franchise address, rather than its main business office, was sufficient for his charge).

The court concludes that plaintiff provided sufficient information to identify both defendants on the intake questionnaire and thereby met the requirements for a charge of discrimination. Thus, the court finds that the plaintiff's intake questionnaire met the requirements of 29 C.F.R. §1601.12(b) and given the language employed by the EEOC on the form, will be considered as a charge of discrimination. This decision is in keeping with the liberal construction generally given

to Title VII's administrative requirements. See Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460-461 (5th Cir. 1970).

Although there is no requirement in 29 C.F.R. §1601.12(b) that the employer's address be included in order for the plaintiff's filing to be considered a timely charge of discrimination, the court is cognizant of the fact that a lack of notice to the defendants, if shown, might raise a jurisdictional defect. Specifically, whether defendants received notice of the charge before plaintiff's suit might affect whether the plaintiff exhausted his administrative remedies, and accordingly, whether this court has jurisdiction over this matter. Based on the record currently before it, the court cannot make such determination and believes that further discovery may be warranted in reaching a conclusion on this issue. The court anticipates that it will, at some point in the future, have to make this jurisdictional determination.

**b.     State Law Claims**

Having denied the motion to dismiss plaintiff's federal claims, the court finds that the defendants' argument that the court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims, based on Ohio Rev. Code §4112 and tortious interference with a business relationship, are moot.

**c.     Ohio Public Policy Claim – Count IV of the Complaint**

Plaintiff claims that his discharge in violation of Ohio Rev. Code §4112 is a violation of Ohio's public policy against disability discrimination. Defendant UDS[2] moves to dismiss this claim on the grounds that the plaintiff already has adequate statutory remedies and therefore does not need a common law tort claim to protect his interests. The plaintiff did not specifically respond to

---

[2]     Lake Erie did not move on this ground.

defendant's argument in its response to the motion to dismiss.

A claim for wrongful discharge in violation of public policy is recognized in Ohio. Barton v. Air Express Int'l USA, Inc., No. 1:06 CV 1885, 2007 U.S. Dist. LEXIS 19053 (N.D. Ohio Mar. 19, 2007). However, in order to prove a wrongful discharge tort, the plaintiff must "establish the existence of clear public policy, that a dismissal of employees under the circumstances employed in the particular case would jeopardize the public policy, that the dismissal was related to the public policy, and that the employer lacked an overriding legitimate business justification for the dismissal." Collins v. Rizkana ,73 Ohio St.3d 65, 69-70, 652 N.E.2d 653, 657-658 (1993)). The first two issues, clarity and jeopardy, are questions of law for the court. Id. at 69-70.

There is a clear public policy against disability discrimination in Ohio. See, Kittle v. Cynocom Corp., 232 F. Supp. 2d 867, 874 (S.D. Ohio 2002) (a clear public policy exists against employment discrimination based on disability is evidenced by Ohio Revised Code section 4112.02(A)). Thus, plaintiffs have established the first element of their claim. However, the plaintiff must also prove the jeopardy element, which requires showing that "without a common-law tort claim for wrongful discharge based on age, Ohio's clear policy against age discrimination would be compromised."Leininger v. Pioneer National Latex, 115 Ohio St. 3d 311, 315, 875 N.E. 2d 36, 41 (Ohio 2007). The jeopardy element is not met where "the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies for its breach." Wiles v. Medina Auto Parts, 96 Ohio St. 3d 240, 244, 773 N.E.2d 526, 531 (2002). That is, "there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." Id.

Ohio Rev. Code §4112 adequately protect the interests of society and the plaintiff in

protecting against disability discrimination. See, e.g., Barlowe v. AAAA Int'l Driving, No. 19794, 2003 Ohio 5748 (Ohio Ct. App. Oct. 24, 2003) (the remedies provided by Ohio Rev. Code § 4112.99 provide broad relief which is sufficiently comprehensive to vindicate the policy goals set forth in that statute). Count IV must therefore be dismissed. The identical legal reasoning is applicable to the claim when made against Lake Erie. Plaintiff was given an opportunity to respond to this argument when made by UDS and declined to do so. Accordingly, the court *sua sponte* dismisses Count IV as to both parties.

## IV. CONCLUSION

The court dismisses Count IV of the complaint. All other claims remain. The motions to dismiss filed by Lake Erie (doc. 4) and UDS (doc 5) are DENIED.

IT IS SO ORDERED.

  S/ James L. Graham
James L. Graham
UNITED STATES DISTRICT JUDGE

Dated: February 11, 2009